IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

AMBLING MANAGEMENT COMPANY,

    Plaintiff,

    v.                      CIVIL NO.: WDQ-07-2071

UNIVERSITY VIEW PARTNERS, LLC,
et al.,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Ambling Management Company ("Ambling") sued University View Partners, LLC ("University View") and others for tortious interference with contractual relations and breach of contract. University View counterclaimed against Ambling for, *inter alia*, negligence and breach of contract. For the following reasons, Ambling's motion *in limine* for judicial notice and University View's motion to amend its counterclaim will be denied.

I.    Background

University View owns the University View Apartments (the "Apartments"), a student apartment building in College Park, Maryland. Am. Compl. ¶¶ 9, 11. The building uses a central heating and cooling system. McBride Aff. ¶ 5. No apartment has an individual or sub-meter to measure utilities. Warren Dep.

170:10-12.

On April 13, 2004, Ambling and University View entered into an agreement (the "Agreement"), under which Ambling was to manage the Apartments until July 31, 2009. Am. Compl. ¶¶ 9, 11. The Agreement required Ambling to "provide services . . . appropriate for the successful management and operation" of the Apartments. *Id.* ¶ 11. Otis Warren was designated University View's representative under the Agreement. *Id.* ¶ 10.

For the 2005-2006 and 2006-2007 school years, University View asked Ambling to prepare leases for the Apartments that would allow University View to pay a fixed amount of the tenants' utility costs. Countercl. ¶¶ 20-27. Utilities included heat, water, sewage, and electricity. *Id.* ¶ 23. University View, upon recommendation by Ambling, sought to collect overage charges by including a Ratio Utility Billing System (the "RUB System") in the leases. ECF No. 170 at 2; Warren Dep. 166:2-4. Under the RUB System, University View was to receive one utility bill, deduct a fixed amount, and allocate the remainder of the bill among the units by the square footage of each apartment. ECF No. 166 at 2 n.2; Warren Dep. 166:1-167:6.

To implement the RUB System, Ambling was to prepare leases under which University View would pay the fixed amount of utility costs per "unit." Countercl. ¶ 22. However, Ambling drafted leases that required University View to pay the fixed amount per

"tenant." *Id.* Because no tenant exceeded that amount, University View had to pay all utility overage charges from 2005 to 2007. *Id.* ¶¶ 24-29.

Ambling asserts that while it was manager of the Apartments, University View and/or Warren committed "wrongful acts specifically aimed at terminating [the Agreement] so that [University View or Warren] could assume Ambling's [manager] role." Am. Compl. ¶ 23. Ambling alleges that Warren undermined its relationship with employees and its ability to perform its obligations under the Agreement. *Id.* ¶ 37.

On October 15, 2006, University View unilaterally terminated the Agreement. *Id.* ¶ 38. That year, the Otis Warren Management Company, owned by Warren, became manager of the Apartments. ECF No. 62 at 5; ECF No. 179 at 4. For the 2007-2008 term, University View implemented the RUB System. Warren Dep. 170:3-9.

On August 3, 2007, Ambling sued University View and others for tortious interference with contractual relations and breach of contract. On August 29, 2007, University View counterclaimed and alleged that Ambling had, *inter alia*, been negligent and breached the Agreement by improperly managing the Apartments. *See* Countercl. ¶¶ 69-71, 73-76. University View asserts that Ambling should have drafted leases that properly implemented the RUB System, which would have allowed University View to recoup a portion of the tenants' utility costs. *See id.* ¶¶ 70-71, 74-75.

3

From May 18-22, 2009, the Court held the first part of a bench trial. See ECF Nos. 79-83.

On October 26, 2010, Ambling moved to amend its answer to University View's counterclaim by adding an affirmative defense of illegality. ECF No. 163. Ambling sought to assert that using the RUB System in the Apartments while it was manager would have been illegal, and thus it could not have breached the Agreement by failing to prepare leases implementing that system. See id. ¶ 1, 6-7. On November 19, 2010, Ambling's motion to amend was granted because it had not been opposed by University View. See ECF No. 167.

On November 19, 2010, Ambling moved in limine for judicial notice that the RUB System was illegal while it managed the Apartments. ECF No. 166.

On December 6, 2010, the second part of the bench trial began. That morning, University View opposed Ambling's motion in limine, and moved to amend its counterclaim. ECF Nos. 170-71.[1] On December 13, 2010, Ambling opposed University View's motion to amend. ECF No. 179.

---

[1] That day, University View served a subpoena on Kim Barkwell, an Ambling employee, directing her to testify and produce documents. See ECF No. 173 at 1-2. On December 7, 2010, Ambling moved to quash the subpoena. See id. Barkwell ultimately did testify, and the parties agree that this motion is moot. See ECF No. 191 at 3; ECF No. 199 at 6; ECF No. 200 at 3.

4

On December 22, 2010, the bench trial ended. *See* ECF No. 187. On December 23, 2010, Ambling filed its reply on its motion *in limine*. ECF No. 185.[2] On December 30, 2010, University View filed its reply on its motion to amend. ECF No. 190.

II. Analysis

  A. Ambling's Motion *in Limine* for Judicial Notice

    1. Standard of Review

Judicial notice is a court's recognition of evidence without formal proof.[3] Laws are subject to notice because they are matters of public record and common knowledge. *Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002) (citation omitted). Statutes and formal rules and regulations may be noticed. *Id.*; *City of Charleston v. A Fisherman's Best, Inc.*, 310 F.3d 155, 171 (4th Cir. 2002).

    2. Ambling's Motion

Ambling requests the Court to take judicial notice that use of the RUB System in the Apartments would have been illegal while it was manager--the 2005-2006 and 2006-2007 terms. ECF No. 166

---

[2] That day, Ambling moved to strike the rebuttal testimony of Francine Churchill, a University View witness, because she had violated the Court's sequestration Order by reviewing another witness's testimony before testifying. ECF No. 186. Because University View does not oppose this motion, *see* ECF No. 191, it will be granted.

[3] *See, e.g., Merzbacher v. Shearin*, 732 F. Supp. 2d 527, 558 n.13 (D. Md. 2010) (citation and internal quotation marks omitted); *Weinstein v. Islamic Rep. of Iran*, 175 F. Supp. 2d 13, 16 (D.D.C. 2001); *see also* 31A C.J.S. *Evidence* § 11 (2011).

at 2. Ambling relies on § 7-301 of Maryland's public utility statute, and *In re Chase*, a Maryland administrative proceeding. *Id.* at 5-6. Ambling asserts that because the RUB System is unlawful, it could not have breached the Agreement by failing to prepare leases implementing that system. *See id.* at 2. Thus, Ambling argues that University View's negligence and breach of contract claims arising out of Ambling's alleged lease-drafting errors must fail as a matter of law. *See* ECF No. 185 at 5.

University View asserts that using the RUB System would have been legal, and its claims remain viable. *See* ECF No. 171 at 4-5.

      a. Section 7-301

Section 7-301 of Maryland's public utility statute applies to gas and electricity. *See* Md. Code Ann., Pub. Util. Cos. § 7-301. The statute requires apartment buildings to measure each unit's gas and electric usage by individual or sub-meters, unless the Public Service Commission of Maryland (the "Commission") authorizes otherwise. Md. Code Ann., Pub. Util. Cos. § 7-301(c)(3). The Commission may authorize an exception if a central heating and cooling system saves more energy than meters. *Id.* § 7-301(c)(4).

Section 7-301 does not indicate that, as a matter of law, implementation of the RUB System would have been illegal while Ambling was manager. Although the Apartments lack meters, the

6

building has a central heating and cooling system. McBride Aff. ¶ 5. It is unclear whether the central system would have saved more energy than meters, thus justifying an exception by the Commission. See Md. Code Ann., Pub. Util. Cos. § 7-301(c)(4). Further, Section 7-301 covers only gas and electricity. See id. § 7-301. The leases included those utilities *and* water and sewage services, which might have been properly assessed under the RUB System. See Countercl. ¶ 23. Thus, noticing Section 7-301 as a law prohibiting the RUB System in the Apartments is unwarranted.

### b. *In re Chase*

*In re Chase* is a Commission proceeding that involved the Chase Apartments (the "Chase") in Bethesda, Maryland. ECF No. 166, Ex. I at 1. The Chase, which lacked meters and a central heating and cooling system, used the RUB System. *Id.*; ECF No. 171 at 14. In a December 22, 2009 settlement agreement, the Commission fined the Chase $100 for billing tenants under the "unauthorized" RUB System instead of using meters. ECF No. 166, Ex. M at 5-6. Because *In re Chase* is an administrative matter, not a statute or formal rule or regulation, it is more appropriately characterized as persuasive authority than a binding law.[4]

---

[4] *See, e.g., Fisherman's Best*, 310 F.3d at 171; *Demos*, 302 F.3d at 706; *Livingston v. Wyeth Inc.*, No. 1:03CV00919, 2006 WL 2129794, at *8 (M.D.N.C. July 28, 2006) ("[A]dministrative decisions [are] useful for guidance, although the Court is not bound by them.").

7

Further, because the Chase did not use a central heating and cooling system--unlike the Apartments--*In re Chase* is distinguishable. *See* Md. Code Ann., Pub. Util. Cos. § 7-301(c)(4) (recognizing an exception for buildings with central systems). Thus, *In re Chase* cannot be noticed as a law compelling a finding that using the RUB System in the Apartments would have been unlawful.

Accordingly, Ambling's motion for judicial notice that implementation of the RUB System would have been illegal while it was manager will be denied.

B. University View's Motion to Amend Its Counterclaim

1. Standard of Review

The decision to grant leave to amend a pleading is committed to the Court's discretion. *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). Leave should be freely granted unless the amendment would be prejudicial, futile, or reward bad faith. Fed. R. Civ. P. 15; *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). Prejudice occurs when, for example, the amendment raises a new legal theory shortly before or during trial that requires the defendant to gather and consider new facts. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). Belated claims that "change the character of litigation" are disfavored. *Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987).

2. University View's Motion[5]

University View moves to add a breach of contract claim alleging that Ambling should have informed it that the RUB System actually was or was believed by Ambling to be illegal. ECF No. 170 at 3; *id.*, Ex. 1 ¶¶ 104-05.[6] University View asserts that because Ambling has asserted the defense of illegality of the RUB System, it should be allowed to sue Ambling for not advising it of the system's alleged unlawfulness. ECF No. 190 at 4. University View argues that Ambling's failure to advise deprived it of the ability to recoup utility overages by other methods, such as increasing rents. ECF No. 170, Ex. 1 ¶ 104.

Ambling argues that University View's motion to amend is prejudicial and futile. ECF No. 179 at 2-4.

Until the proposed amendment, University View sought to hold Ambling liable for failing to properly implement the RUB System. *See, e.g.*, Countercl. ¶¶ 70-71, 74-76. University View now seeks to sue Ambling for failing to advise that the RUB System was or was believed to be illegal. ECF No. 170, Ex. 1 ¶ 104-05. The evidence required to defend against this new claim

---

[5] Filed the morning of the second part of the bench trial, and about six weeks after Ambling sought to add a defense that because the RUB System was purportedly illegal while it was manager, it could not have breached the Agreement by failing to implement that system. ECF Nos. 163, 170.

[6] The Agreement required Ambling to successfully manage and operate the Apartments. Am. Compl. ¶ 11.

9

would be of a "different character than the proof which [Ambling] had been led to believe would be necessary."[7]  Further, because University View moved to amend the morning of the second part of the bench trial, Ambling had no opportunity to conduct discovery about University View's alleged deprivation of alternatives to recover excess utility costs.  *See Laber*, 438 F.3d at 427.

Permitting the amendment would also be futile.  There is no indication that the Agreement required Ambling, which managed the Apartments, to provide legal advice to University View. Thus, Ambling could not have breached the Agreement by failing to inform University View about the purported illegality of the RUB System.[8]

Accordingly, University View's motion to amend its counter-claim will be denied.

---

[7] *Deasy*, 833 F.2d at 40-43 (affirming denial of motion made "right before trial" to add a claim for negligent performance of a medical procedure when the complaint initially alleged failure to disclose the results of the procedure).

[8] *See, e.g.*, *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *17 (D. Md. Aug. 6, 2010) (fired employee's proposed breach of contract claim against her union was futile; although the employee alleged that the union should have sued her employer, the union had "no [contractual] duty" to act on her behalf once terminated).

III. Conclusion

For the reasons stated above, Ambling's motion *in limine* for judicial notice and University View's motion to amend its counterclaim will be denied.

8/9/11
Date

/s/ William D. Quarles, Jr.
William D. Quarles, Jr.
United States District Judge